## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

**JUSTIN ASHE and JAMIE ASHE H/W**

Troy NY 12180

v.

**CIVIL CASE NUMBER:** 1:23-cv-1281 (GTS/CFH)

**SIG SAUER, INC.**
72 Pease Boulevard
Newington, NH 03801

**JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiffs, Justin and Jamie Ashe, by and through their counsel, hereby state the following Complaint in Civil Action against the above-captioned Defendant and, in support thereof, aver as follows:

### SUMMARY AND NATURE OF ACTION

1.  Plaintiff, Justin Ashe, is an adult individual, citizen, and resident of the State of New York, residing at the above captioned address.

2.  Plaintiff Jamie Ashe is an adult individual, citizen, and resident of the State of New York, residing at the above captioned address.

3.  This action seeks actual, compensatory, and punitive damages, and equitable relief, relating to Defendant, SIG Sauer Inc.'s (hereinafter "Defendant", "Sig" or "Sig Sauer"), negligence, gross negligence, recklessness, defective design, breach of warranties and unfair and deceptive marketing practices regarding a semi-automatic gun.

4.  Specifically, this matter involves a striker-fired, semi-automatic pistol known as the "P365" that due to its defective design is highly susceptible to unintentional discharge, i.e., firing a round when the user did not intentionally activate the trigger.

1

5.      Ashe, a resident of New York, was issued a SIG Sauer P365 in connection with his duties as an officer in the police department for the City of Troy in New York.

6.      Prior to October 14, 2020, Ashe had performed firearms training with the subject P365 in New York.

7.      Ashe's P365 should not have discharged without the trigger being intentionally pulled.

8.      Plaintiffs bring causes of action under New York law for negligence, strict products liability, breach of express warranty, breach of implied warranty, and negligent and intentional infliction of emotional distress in view of Sig's misrepresentations about the safety of the weapon.

9.      Plaintiffs bring a cause of action for loss of consortium on behalf of Jamie Ashe.

10.     The SIG Sauer P365 has upon information and belief replaced a compact version of the SIG P320 which operates in a nearly identical fashion.

11.     Defendant, SIG, had knowledge long before this incident that the P320--its first ever striker-fired pistol--was capable of firing without intentional trigger actuation.

12.     Upon information and belief, SIG, has had knowledge long before this incident that the P365 was capable of firing without intentional trigger actuation.

13.     Defendant, SIG, thus is aware that the P365, modeled after the P320 is also susceptible to the same issues of unintended discharge as the P320.

14.     Upon information and belief, Sig Sauer is the first and only manufacturer of a striker fired weapon that is single-action, or "pre-cocked" without any form of external safety to prevent unintended discharges.

2

15.     As placed into the stream of commerce and as manufactured and designed, the P365 was defective in that defendants were negligent in failing to properly design the firearm; defendants were negligent in manufacturing the firearm according to a design which they either knew, or in the exercise of reasonable diligence, should have known would create a defective, dangerous and unsafe instrumentality, or in failing to properly manufacture the equipment according to a proper design; in failing to take every precaution to insure that the equipment was properly manufactured and designed; in failing to properly or adequately inspect the equipment during design; and in failing to provide adequate warning to any user that the equipment was a dangerous, unsafe and/or defective instrumentality as designed.

## JURISDICTION

16.     Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332.

17.     Defendant has its principal place of business in New Hampshire, located at 72 Pease Boulevard Newington, NH 03801 and, accordingly, is a citizen of New Hampshire.

18.     Defendant SIG does business in and is subject to personal jurisdiction in this judicial district. Defendant has registered to do business in the state of New York and therefore is subject to both general jurisdiction and specific jurisdiction due to its conduct and actions within the state.

19.     The amount in controversy substantially exceeds, exclusive of interest and costs, $75,000.

## VENUE

20.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## ALLEGATIONS

3

21.     Plaintiff has substantial firearms experience and was issued this gun for his job responsibilities in New York.

22.     Plaintiff has suffered permanent physical injury and disfigurement as a direct and proximate result of the negligence and breach of warranties and deceptive marketing practices of SIG.

23.     At the time of the incident Ashe served as a police officer with the City of Troy Police Department.

24.     At least one other officer on the Troy Police department experienced an unintended discharge of their department issued P320.

25.     Ashe was issued a P365 because of his work as a "plain-clothes" officer, because the P365 is more compact and can be more easily concealed for undercover work.

26.     Defendant designs and manufactures firearms for sale to military and commercial markets in the State of New York, throughout the United States, and internationally. It markets and sells its products directly and through dealers.

27.     On October 14, 2020, Ashe was using the restroom in the City of Troy police department. His department issue SIG P365 was in an "inside the pants" holster on his right side.

28.     The "inside the pants" holster was a typical carry mechanism for plain-clothes officers.

29.     As he pulled his pants up while the gun was holstered, the gun discharged without any intentional contact with the trigger.

30.     Ashe's hands were nowhere near the P365.

31.     Ashe never touched the P365's trigger.

32.     Ashe's finger could not have touched the P365's trigger while it was holstered.

4

33.     The subject holster sustained considerable damage since the P365 fired while it was holstered.

34.     Upon information and belief, the round's spent shell casing did not eject from the port of the pistol, due to the pistol being holstered at the time of discharge.

35.     The bullet struck Ashe in his right foot and exited near his ankle, fracturing his talus bone. As a result he was out of work for nearly five months, and required physical therapy for 3 months, until his worker's compensation benefits were exhausted.

36.     He was told by physicians that he would "never get his full range of motion back" without surgery.

37.     Ashe sustained permanent physical injury as a result that will cause him pain and limitations for the rest of his life. He suffers with severely limited range of motion in his ankle, and cannot run or walk without a limp. His strength in his right leg has been severely diminished.

38.     As a direct and proximate result of Defendants' negligence, carelessness, recklessness, strict liability and/or other liability producing conduct, Ashe was forced to suffer serious, disabling, and permanent injuries and emotional distress, the full extent of which has yet to be determined. Ashe has in the past and is reasonably likely to require medicines, medical care and treatment. Mr. Ashe has in the past and may in the future continue to be compelled to expend monies and incur further obligations for such medical care and treatment. Ashe has in the past and may in the future continue to suffer agonizing aches, pains, and psychological and emotional anguish. Ashe has in the past and may in the future continue to be disabled from performing his usual duties, occupations, and avocations, all to Ashe's great loss and detriment. The incident has resulted in substantial physical harm and related trauma to Ashe, who has received substantial and ongoing treatments and medicines.

39.     It is standard operating procedure for U.S. law enforcement agencies, local police departments, and the military, at a commander's discretion, to carry pistols with a chambered round.

40.     SIG was aware of the latter fact at the time it designed and manufactured all its pistols, including the P365.  The P365 is one of two striker fired pistols made by SIG[1]  that lack any external safety in the form of either a trigger safety or a manual thumb safety.

41.     Defendant, SIG is aware of over one hundred claims of the P320 discharging unintentionally as well as P365s discharging unintentionally.

42.     When SIG shipped P365s to the Troy Police Department, and thousands of others across the country, SIG knew or should have known, that the weapon was defective in its design and unreasonably dangerous for its ordinary uses, intended uses, and all other foreseeable uses and that un-commanded discharges could occur in the ordinary course of using the weapon.

43.     Before SIG shipped the first P365s to the Troy Police Department, SIG was aware of other, prior un-commanded discharges of the P320 platform and the P365 platform, many of which pre-dated the sale to the Troy Police Department.

44.     The SIG P365 is substantially similar to the P320 in terms of its fire control unit and trigger system, as it related to the design defect of unintentional discharges, and as such is defective in its unreasonably dangerous design.

## COUNT I

## STRICT PRODUCT LIABILITY

45.     Plaintiffs re-adopt and re-allege all paragraphs of this pleading as if fully set forth herein.

---

[1] The first being the P320.

6

46.     SIG, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, is engaged in the regular business of selling firearms including the subject P365 which was sold to Troy Police Department for use by Plaintiff.

47.     SIG designed, produced, manufactured, distributed, supplied and/or sold the P365 in a defectively designed condition, in that it was highly susceptible to unintentional discharges.

48.     Plaintiff could not have learned of the defects (internal mechanism of the firearm) by use of reasonable care and diligence.

49.     Plaintiff SIG P365 was not altered in any way from the condition in which it left the defendant's control.

50.     SIG placed the subject P365 into the stream of commerce.

51.     Plaintiff used the subject P365 for its intended and foreseeable purpose, i.e., a law enforcement officer carrying it holstered while on duty.

52.     The defective condition of the P365 caused Plaintiff's injuries.

53.     SIG is therefore strictly liable to Plaintiff.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against the Defendant, SIG, Sauer, Inc., for compensatory and punitive damages, together with lawful interest, attorneys' fees, costs of suit, and all other claims available by law.

## COUNT II

### NEGLIGENCE, GROSS NEGLIGENCE AND RECKLESNESS

54.     Plaintiffs re-adopt and re-allege all paragraphs of this pleading as if fully set forth herein.

55.     At all relevant times, SIG owed Ashe the duty to design the P365 weapon in such a manner and with the exercise of reasonable care, so as to prevent it from firing without an intentional trigger pull before selling the gun and placing it into the stream of commerce.

56.     At all relevant times, SIG owed Ashe the duty to manufacture, assemble, inspect and/or test its P365s in such a manner and with the exercise of reasonable care, so as to prevent it from firing without an intentional trigger pull before selling the gun and placing it into the stream of commerce.

57.     At all relevant times, SIG owed a duty to unambiguously warn consumers and/or intended users of the P365, including Ashe, of known or suspected defects that rendered the gun unreasonably dangerous to handle or use. Upon information and belief, SIG knew or had reason to know that the P365 posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, industry publications and research, and other sources of information to be developed in discovery.

58.     SIG breached the above-cited duties in various ways, including but not limited to, one or more of the following negligent acts:

    i.     By failing to use due care in designing and manufacturing the P365's firing and striker assembly so as to prevent un-commanded discharges;

    ii.    By failing to use due care in designing and manufacturing the P365's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent un-commanded discharges;

    iv.   By failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge un-commanded as described above;

    v.    By negligently failing to unambiguously warn purchasers and end users of the gun, including Ashe, of said defective,

hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known through the exercise of ordinary care;

vi.   By failing to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge un-commanded while in the possession of SIG, and during which times employees, servants or agents of SIG had an opportunity to inspect, service and work on the gun;

viii.   Other negligent and reckless acts and omissions to be developed in the course of discovery.

59.   SIG knew, or should have known, that exposing users to the dangerous and defective and hazardous conditions existing in the gun would or could give rise to serious bodily injuries to such users, up to and including death.

60.   The gun's defective condition was not visible and Ashe was not capable of realizing the dangerous condition and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

61.   SIG's negligence, and recklessness as alleged in this Count, directly and proximately caused the October 14, 2020 un-commanded discharge and Ashe's injuries resulting from the accident.

62.   As a direct and proximate result of the negligence and recklessness set forth in this Count, Ashe suffered severe physical injury, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical deformity and handicap and embarrassment associated with the same, loss of earnings and earning capacity, and incurred medical expenses for his care and treatment. These injuries are either permanent or continuing in their nature and Ashe will suffer such losses and impairments in the future.

9

**WHEREFORE**, Plaintiffs demand judgment in their favor and against the Defendant for compensatory and punitive damages, together with lawful interest, attorneys' fees, costs of suit, and all other claims available by law.

## COUNT III

### BREACH OF WARRANTIES

63.     Plaintiffs readopt and re-allege all paragraphs of this pleading as if fully set forth herein.

64.     At all relevant times, SIG was in the business of marketing, selling, and distributing weapons, including the P365 causing Ashe's injuries.

65.     SIG specifically marketed and sold its firearms to law enforcement agencies, such as the Troy Police Department, knowing they would be used by officers in the ordinary course of performing their law enforcement duties.

66.     In marketing their firearms to law enforcement, including the P365, SIG made certain express and implied warranties that the P365 was safe for its intended and foreseeable uses.

67.     Prior to the accident as aforesaid, and upon receipt of the P365, plaintiff relied upon certain guarantees made by defendants that the equipment was safe and fit for the use intended.

68.     In addition thereto, the plaintiff relied upon implied warranties that the equipment was of merchantable quality.

69.     These warranties were breached by the defendants. The equipment was defective, and defendants were negligent in failing to adequately manufacture, design, distribute said equipment in that it did not have any or adequate protection or safety device to protect the users from injury, all contributing to the damages sustained by plaintiff as alleged herein.

10

70.    Furthermore, defendants failed to adequately warn of the dangers inherent in the P365's use.

71.    As a direct and proximate result of the breaches set forth in this Count, Ashe suffered severe physical injury, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, physical deformity and handicap and embarrassment associated with the same, loss of earnings and earning capacity, incurred medical, nursing, attendant care and life care expenses for his care and treatment. These injuries are either permanent or continuing in their nature and Ashe will suffer such losses and impairments in the future.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against the Defendant for compensatory and punitive damages, together with lawful interest, attorneys' fees, costs of suit, and all other claims available by law.

### COUNT IV

### LOSS OF CONSORTIUM

72.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

73.    At all relevant times hereto, Plaintiff, Jamie Ashe, was the lawfully wedded wife of husband-plaintiff, Justin Ashe, with whom she lives.

74.    As a result of the injuries sustained by Plaintiff, Justin Ashe, wife-plaintiff Jamie Ashe, has been and will continue to be deprived of the love, assistance, companionship, consortium and society of her husband, Plaintiff, Justin Ashe, all to her great loss and detriment.

**WHEREFORE**, Plaintiff, Jamie Ashe, demands judgment in her favor and against Defendant for compensatory and punitive damages, together with lawful interest, attorneys' fees, costs of suit, and all other claims available by law.

Respectfully submitted,

**PBS LEGAL, LLC**

By: */s/ Paul B. Sherr*
     PAUL B. SHERR
     Bar ID No. 2872612
     8 John Street
     Nassau, New York 12123
     (518)-766-4090 (Telephone)
     (518)-931-0168 (Facsimile)
     *Attorney for Plaintiff*